The ESTATE OF Salamin HANDY, Mountaha Handy, and S & B Service Center, Inc., Plaintiffs,

v.

**R.L. VALLEE, INC., Defendant.**

No. 2:97–CV–230.

United States District Court, D. Vermont.

Feb. 2, 1998.

David Herbert Greenberg, Burlington, VT, for plaintiffs.

Christopher Denis Roy, Downs, Rachlin & Martin, P.C., Burlington, VT, for defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiffs, the Estate of Salamin Handy, Mountaha Handy (collectively "Handy") and S & B Service Center, Inc., ("S & B") bring an action for injunctive and declaratory relief against Defendant R.L. Vallee ("Vaulted") under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2805. On July 17, 1997, Handy filed a motion for a temporary restraining order, seeking to prevent Vallee from removing brand signs, equipment and machinery from S & B and terminating the supply of brand motor fuel and related products. For the reasons that follow, the motion is denied.

### I. *Findings of Fact*

Plaintiff Handy owns property and a service station building at 651 Roosevelt Highway in Colchester, Vermont ("the Station"). Handy has leased the property to S & B since December 1993. The station is located near Exit 17 of Interstate 89 and is, therefore, a desirable location for distributors. S & B is obliged to obtain its requirements of gasoline and petroleum products pursuant to a Supply Agreement between Champlain Oil Company, Inc. ("Champlain") and Handy.

On October 1, 1987, Handy entered into a written Branded Gasoline Supply Agreement with Champlain pertaining to the Station. Handy agreed to purchase Gulf brand gasoline products from October 1, 1987, through September 30, 1992, with an automatic option to extend the contract for five years, through September 30, 1997, unless notice to the contrary was given by either party to the agreement not less than go days prior to the end of any one-year term. Under the agreement, Champlain owned the tanks and pumps.

Vallee is a wholesale distributor of Mobil brand motor fuel and related products. It also owns and operates several Mobil service stations and convenience stores. The parties testified that Mobil brand motor fuel is the gasoline of choice for New England consumers and has the largest share of the retail fuel and credit card sales market in the region.

In the summer of 1991, Vallee solicited Handy to make several stations into Mobil branded service stations, including both the Station and Handy's Essex Center service station. Vallee entered into a franchise agreement under the PMPA to supply Mobil brand motor fuel directly to Handy's Essex Center service station. These negotiations were very detailed and took place over a number of months. It has been Vallee's practice since 1988 to enter into written contracts when contracting under the PAPA with retailers. The Essex Center agreement was written.

Handy was also interested in rebranding the Station as a Mobil franchise. The supply agreement with Champlain, however, required Handy to purchase motor fuel through Champlain, which was not an authorized Mobil motor fuel distributor. Vallee was unable to persuade Champlain to waive its rights under its agreement with Handy and allow Vallee to replace Champlain as the motor fuel supplier for the Station.

Vallee was successful, however, in negotiating a sub-distributorship arrangement under which Vallee would sell Mobil brand motor fuel to Champlain for resale to the Station. This subdistributor arrangement between Champlain and Vallee modified the existing supply agreement between Champlain and Handy, and allowed the Station to be branded as a Mobil retailer. In a parallel arrangement, Champlain agreed to supply Citgo brand motor fuel to Vallee, which Vallee then distributed at a kiosk leased and operated by Vallee at Taft's Corners in Williston, Vermont. These agreements were oral, as were almost all of Vallee's sub-distributorship contracts. Vallee did not supply motor fuel directly to the Station, nor did it receive payment directly from S & B. The subdistributor arrangements between Champlain and Vallee did not give either entity control over the other; they remained competitors.

In anticipation of the 1992 termination of the Champlain–Handy contract, Vallee continued to negotiate with Handy about a direct supply agreement between Vallee and Handy for the Station. During Vallee's negotiations with Handy, several terms were discussed, such as the possible rack price and commission for Mobil motor fuel. In anticipation of a direct contract with Vallee, Handy obtained permits in 1991–92 to build a convenience store next to the Station.[1] These actions and discussions were in anticipation of and dependent upon the creation of a direct contractual relationship between Handy and Vallee with regard to the Station.

Vallee's attorneys prepared draft documents regarding Vallee's possible purchase of the Station's tank and pumps once the Champlain–Handy contract ended in 1992. The draft agreements were never executed. Handy also executed a letter, in the form provided by Vallee, confirming for Mobil Oil Corporation that Handy had no detailed discussion with any other distributors for those locations.

However, Handy did not utilize his option to terminate the supply contract with Champlain. Thus, the Champlain–Handy supply agreement was automatically extended for five years. Champlain continued to deliver Mobil brand motor fuel to the Station under the oral sub-distributorship agreement with Vallee. Champlain Oil's sub-distributorship agreement with Vallee included a licensing arrangement allowing the "downstream" party (Handy) to use the Mobil trademark at the Station. This agreement required Champlain to assist Handy in operating a Mobil station according to Mobil standards. However, given that Champlain did not have a direct contractual relationship with Mobil Oil Corporation and knew little about Mobil operating standards, Vallee facilitated the oper-

1. The convenience store was never constructed because Handy continued to purchase its Mobil motor fuel directly from Champlain.

ation of the Mobil franchise at the Station. Vallee painted the gas pumps and island, provided paint for the service station, promotional signs, and monthly visits by a Vallee salesperson to discuss marketing and Mobil gasoline promotions.

In the Spring of 1997, S & B suspected it was being overcharged by Champlain. Handy discovered that Champlain Oil delivered Shell or Citgo instead of Mobil brand motor fuel to the Station on approximately 19 occasions over a three-year period. Handy brought this misbranding to the attention of Vallee. In discussions with Vallee, Champlain Oil admitted to willfully misbranding fuel supplied to S h B. In response to the misbranding, Vallee notified Champlain Oil that it terminated its supply agreement under the PMPA on May 27, 1997.[2] Vallee told Handy that the Mobil signs would be taken down from the Station on that date.

Vallee did not terminate Champlain Oil's supply agreement for a service station not owned by Handy. Vallee accepted Champlain's representation that the two misbrandings at that location were not deliberate and occurred because of driver error.

After terminating its contract with Champlain, Vallee applied to Mobil Oil Corporation for a Mobil franchise across the street from the Station. Although Vallee had been planning to build a service station and convenience store at that location for approximately three years, it had not previously applied to be branded a Mobil station because of a Mobil Oil Corporation policy not to permit two Mobil service stations to be operated in close proximity. Vallee's application is pending. Handy also applied to Mobil Oil Corporation to replace the Texaco franchise it owns near the Station. Handy's request was denied. A Mobile franchise at Exit 17 can be expected to generate $15,000 per month in revenues.

Handy seeks a temporary restraining order enjoining Vallee from terminating his agreement to supply S & B with Mobil brand motor fuel oil and developing a Mobil convenience store and station on Roosevelt Highway. During the Tendency of this case, Vallee has authorized Champlain's continued delivery of Mobil brand motor fuel to S & B.

## II. Conclusions of Law

■ The Plaintiffs seek injunctive and declaratory relief based upon a claim that a franchise relationship existed between Handy and Vallee under the PMPA.[3] "The purpose of the PMPA is to establish 'minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchiser or supplier of such fuel.'" *Checkrite Petroleum, Inc. v. Amoco Oil Co.*, 678 F.2d 5, 7 (2d Cir.1982) (quoting S.Rep. No. 95–731, *reprinted in* 1973 U.S.C.C.A.N. 872, 873.) Whether Handy and Vallee have a franchise relationship under the PMPA depends on finding the existence of mutual obligations and responsibilities which have arisen under a franchise.[4]

---

**2.** Under the PMPA, a franchiser may terminate the franchise relationship on the basis of "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable." 15 U.S.C. § 2802(b)(2)(C). Under section 2802(c)(10), "willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee" is considered such an event. Although 90 days notice is usually required before termination of a franchise agreement for cause, notice can be considerably shorter if the offense by the party is a serious one, such as misbranding. *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 60 (2d Cir.1984) (franchisee's misbranding allowed for immediate termination).

**3.** The PMPA defines "franchise relationship" as "the respective motor fuel marketing or distribution obligations and responsibilities of a franchis-

er and a franchisee which result from the marketing of motor fuel under a franchise." 15 U.S.C. § 2801(2).

**4.** The PMPA defines the term "franchise" as follows:

As used in this subchapter:
(1)(A) The term "franchise" means any contract—
(I) between a refiner and a distributor,
(ii) between a refiner and a retailer,
(iii) between a distributor and another distributor, or
(iv) between a distributor and a retailer,
under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies

A franchise agreement may be written or oral, 15 U.S.C. § 2801(10), but not implied. *Iannuzzi v. Exxon Co., U.S.A.,* 572 F.Supp. 716, 724 (D.N.J.1983) (course of conduct insufficient to establish franchise, in absence of prior existing franchise agreement); *Rogue Valley Stations, Inc. v. Birk Oil Co., Inc.,* 568 F.Supp. 337, 344 (D.Or.1983) (implied contract will not support franchise relationship). *But see Lasko v. Consumers Petroleum of Connecticut, Inc.,* 547 F.Supp. 211, 219 (D.Conn.1981) (contract giving rise to franchise relationship would be implied between retailer and distributor where distributor exercised control over brand of gas sold, even though gas was supplied by refiner). Under the PMPA, a franchise must involve a direct contractual relationship between parties. *Hutchens v. Eli Roberts Oil Co.,* 838 F.2d 1138, 1144 (11th Cir.1988); *see also DuFresne's Auto Serv., Inc. v. Shell Oil Co.,* 992 F.2d 920, 927 (9th Cir.1993). A plaintiff bears the burden of establishing the existence of a franchise relationship between the parties under the PMDA. *Brownstein v. Arco Petroleum Prod. Co.,* 604 F.Supp. 312, 314 (E.D.Pa.1985); *Rogue Valley,* 568 F.Supp. at 344.

It is undisputed that Vallee is a distributor of motor fuel, and that Handy is a retailer of motor fuel. It is also undisputed that a franchise relationship existed between Handy and Vallee with respect to Handy's Essex Center service station, and that a franchise relationship existed between Vallee and Champlain with respect to motor fuel destined for the Station. What is in question is whether a franchise relationship existed between Handy and Vallee with respect to the Station, in other words whether a contract existed between them which authorized Handy to use the Mobil brand in connection with the sale of motor fuel there. After consideration of the hearing testimony and the submitted documents, the Court concludes that Handy has failed to demonstrate the existence of a direct contractual relationship with Vallee regarding the Station and

therefore is ineligible for relief under the PAPA.

In 1991, Handy and Vallee began negotiating a direct franchise agreement for the Station. Several terms of a future agreement were discussed: the construction of a convenience store, the rack price of Mobil fuel, and the possible commission to Handy should it install new pumps, tanks and other equipment on the property. However, all of these terms were tentative and dependent upon the creation of a direct contractual relationship between Handy and Vallee. This relationship could only come into existence if Handy terminated its contract with Champlain. In September of 1992 Handy did not exercise its option to terminate, and thus foreclosed a direct supply contract between Handy and Vallee for the next five years.

Handy contends that Vallee had agreed to enter into a contract to supply Mobil motor fuel directly whenever it ceased to do business with Champlain. It is possible to create a binding and enforceable agreement to enter into a contract. *Reynolds v. Sullivan,* 136 Vt. 1, 3, 383 A.2d 609, 611 (1978).[5] However, "for a preliminary agreement to be enforceable, it must contain all material and essential terms to be negotiated in the subsequent contract." *Sunnyside Cogeneration Assoc. v. Central Vermont Pub. Serv. Corp.,* 915 F.Supp. 675, 680 (D.Vt. 1996) (*citing Reynolds,* 136 Vt. at 3, 383 A.2d at 611). As is evident from Vallee and Handy's negotiation over the Essex Center service station franchise, Handy was a meticulous negotiator. It is not credible that either Handy or Vallee would have accepted as binding the partial and incomplete terms of a proposed 1991–92 contract without further discussion and the drafting and execution of a formal agreement. Because of the absence of material and essential terms the Court finds that no preliminary agreement existed between Vallee and Handy.

Vallee's occasional provision of materials to the Station and its supply of gasoline to

---

motor fuel to the distributor which authorizes or permits such use.
15 U.S.C. § 2801(1)(A).

5. State contract law applies to cases brought under the PMPA, where its provisions are not inconsistent with the Act. *Pro Sales, Inc. v. Texaco, U.S.A.,* 792 F.2d 1394, 1399 n. 7 (9th Cir. 1986).

Handy's distributor does not demonstrate the existence of a direct contract between Handy and Vallee. Champlain was unable to fulfill some of its duties under the sub-distributorship agreement with Vallee, and Vallee stepped in to ensure that the Station was being operated according to Mobil standards. Under the PMPA, these actions do not create a franchise, absent a direct contract between the parties. *Hutchens*, 838 F.2d at 1144; *see also, Checkrite*, 678 F.2d at 10 (legislative history of the act expresses no intent to expand protection of PMPA beyond plain meaning of its terms).

The Court concludes that there was no contract between Handy and Vallee, and therefore there was no franchise. Without a franchise having existed, there were no mutual obligations and responsibilities between the parties to give rise to a franchise relationship under the PMPA. Accordingly, Handy is ineligible to seek relief under the PMPA.

### CONCLUSION

The Plaintiffs' Motion for Temporary Restraining Order (Paper 2) is hereby DENIED.