2012 VT 77

# Evans Group, Inc. v. Robert Foti and Foti Fuels, Inc.

[59 A.3d 744]

No. 11-274

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed September 14, 2012

*Barry C. Schuster* and *Eric G. Derry* of *Schuster, Buttrey & Wing, P.A.*, Lebanon, New Hampshire, for Plaintiff-Appellee.

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, and *William L. Durrell* and *Nathan D. Rectanus*, Law Clerk, of *Benjamin, Bookchin & Durrell, P.C.*, Montpelier, for Defendant-Appellant.

¶ 1. **Burgess, J.** Appellant Foti Fuels, Inc. (Foti), a fuel distributor, appeals from the Washington Civil Division's judgment in favor of Evans Group, Inc. (Evans), also a fuel distributor. Evans cancelled its agreement to sell fuel to Foti for resale and delivery to a retail gasoline station, and sued for payment of an outstanding balance of $68,864. Foti claims the unilateral termination of the agreement violated the federal Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801-2807, which regulates fuel franchise agreements. The trial court determined that Foti was not a "franchisee" within the meaning of the PMPA and, therefore, not entitled to its contract termination protections. We affirm.

¶ 2. Both Evans and Foti were wholesale fuel distributors who purchased fuel from major oil companies for resale to service stations and other retail outlets. In the trade, they are known as "jobbers." Foti had a long-term business relationship with a Montpelier retail fuel outlet, Parker's Quick Stop (Quick Stop), supplying it with gasoline. Evans maintained an account at a Citgo fuel depot at Albany, New York, where it purchased large quantities of Citgo-brand fuel for redistribution to retail outlets. In 1999, Evans and Foti reached an agreement by which Evans would purchase gasoline from Citgo and supply it to Foti for

one-half cent per gallon over cost to Evans.[1] Under this arrangement, Quick Stop, already supplied by Foti with a different brand of gasoline, converted to a Citgo gas station. Evans and Foti agreed to split a discount offered by Citgo to offset the cost of new brand-name signage at Quick Stop.

¶ 3. As agreed, Foti picked up Citgo gas from the Albany depot and delivered it to Quick Stop. The financial relationship is not entirely clear from the court's findings, but generally it appears that Foti would charge the cost of the gas to the Evans account at the depot, and pay Evans for the gas charged. Evans received credit card payments for gasoline purchased at Quick Stop and would credit these payments to Foti who, in turn, would credit Quick Stop. Cash sales at Quick Stop would be paid over to Foti which, in turn, would be paid over to Evans.

¶ 4. This arrangement worked satisfactorily for almost a decade, during which the delivery of Quick Stop's fuel changed hands. In 2004, Foti's owner sold his affiliated tanker truck company, Foti Fuels Enterprises, Inc., to one Kurrle, an employee of Foti, and later retired to Arizona. Kurrle also assumed management of Foti, but in 2008 fell into disagreement with the owner who resumed managing Foti from Arizona.

¶ 5. Thereafter, Foti's relationship with Evans and Quick Stop deteriorated. Foti became delinquent in its formerly prompt payment of $10,000 to $35,000 to Evans every ten days or so. At the same time, Quick Stop became concerned about continuing business with Foti because of lost sales due to uneven gasoline deliveries to the station. In one incident, one of Foti's trucks was locked out of the Albany depot for several hours. In another, Quick Stop ran out of gas for part of a day. Dissatisfied, Quick Stop began to buy fuel directly from Evans in early April 2009.

¶ 6. On April 21, 2009, Evans sent Foti written notice terminating their agreement. The termination was retroactive to April 2, 2009, the date of the first direct delivery of gasoline by Evans to Quick Stop. Evans also notified defendant that a balance of $68,864 was due for fuel drawn on Evans' account at the Citgo depot. Evans sued Foti to recover this outstanding balance, and Foti counterclaimed, alleging Evans' unilateral termination of their agreement was improper under the PMPA.

---

[1] The specific terms of the agreement were apparently recorded on a napkin which has since gone missing.

¶ 7. The PMPA regulates "the termination and nonrenewal of franchise relationships for the sale of motor fuel." *Checkrite Petroleum, Inc. v. Amoco Oil Co.*, 678 F.2d 5, 7 (2d Cir. 1982). Enacted as a "response to widespread concern over increasing numbers of allegedly unfair franchise terminations . . . in the petroleum industry," the PMPA provides protection against unilateral dissolution of franchise relationships, absent a statutorily-specified reason for termination. *Mac's Shell Serv, Inc. v. Shell Oil Prods. Co.*, 559 U.S. 175, 178, 130 S. Ct. 1251, 1255 (2010); see also 15 U.S.C. § 2802 (listing legitimate reasons for termination under the statute). The PMPA also establishes the manner in which termination may occur. For example, it mandates ninety days notice prior to termination, 15 U.S.C. § 2804, a ·procedural nicety not observed by Evans here. Foti maintained that it was a franchisee under the statute's definition, which encompasses any distributor or retailer authorized "to use a trademark in connection with the . . . distribution of motor fuel." *Id.* § 2801(4).

¶ 8. At trial, Foti claimed the PMPA's franchise protection on two related grounds. One was that it held a "franchise" under § 2801(1)(B) of the Act, which defines a "franchise" as including:

> (ii) any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed —
>
>> (I) under a trademark owned or controlled by a refiner . . . .

The other rationale, commanding almost all of the parties' attention in litigation, was that Foti was authorized or licensed to use the Citgo trademark in connection with its sale of gasoline to Quick Stop, and so had a "franchise" as defined at § 2801(1)(A) providing, in pertinent part, that:

> The term "franchise" means any contract —
>
> . . . .
>
> (iii) between a distributor and another distributor, . . .
>
> . . . .
>
> under which a . . . distributor . . . authorizes or permits a . . . distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled . . . by a refiner which

supplies motor fuel to the distributor which authorizes or permits such use.

¶ 9. Ruling in favor of Evans, the trial court found that Foti had no rights to the Citgo trademark during its arrangement with Evans and was therefore not a franchisee under the PMPA. The court explained that the PMPA applies only if "the putative franchisee can show that it was authorized to use, or authorized to permit others to use, a refiner's trademark." The court noted that the tanker trucks, also owned by Foti's principal, and employed by Foti to deliver fuel to Quick Stop, displayed the Foti name, but not the Citgo trademark. The court found, overall, that neither Foti Fuels nor the tanker company was authorized to use the Citgo trademark "or to hold itself out as a Citgo representative in any other way." The court concluded that selling Citgo fuel to a Citgo-branded gas station did not render Foti a Citgo franchisee under the statute. Foti appeals.

¶ 10. Foti's sole claim of error on appeal is that the trial court erred in determining that Foti never had authority over the Citgo trademark.[2] We will uphold the court's findings of fact unless they are clearly erroneous. *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶ 12, 183 Vt. 574, 946 A.2d 830 (mem.). The court's finding "will not be overturned merely because it is contradicted by substantial evidence," but only if no credible evidence supports it. *Town of Bethel v. Wellford*, 2009 VT 100, ¶ 5, 186 Vt. 612, 987 A.2d 956 (mem.) (quotation omitted).

¶ 11. Foti contends that its status as franchisee turns not on its actual use of the trademark, but on whether it was authorized to use the trademark if it wished to do so. Foti asserts that since it exclusively sold Citgo fuel to Quick Stop, it was therefore authorized to use the Citgo trademark in connection with its distribution of Citgo's product. Thus, as a franchisee under the PMPA, Foti argues that it was protected against summary termination of its contract by Evans.

¶ 12. The PMPA protects franchise contracts: "between a distributor and another distributor." 15 U.S.C. § 2801(1)(A)(iii). Under the statute's pertinent provisions, a "franchisee" is a "distributor . . . authorized or permitted, under a franchise, to use

---

[2] Foti does not dispute the $68,864 due to Evans, and does not renew its argument that it was a franchisee under 15 U.S.C. § 2801(1)(B) solely by virtue of its agreement to resell brand-name gasoline to Quick Stop.

a trademark in connection with the sale, consignment, or distribution of motor fuel." *Id.* § 2801(4). The Act thus focuses on "the usual three-party chain of authorization" from refiner to distributor to retailer, each authorized, in turn, to employ the refiner's trademark in their commerce. *Lasko v. Consumers Petroleum of Conn., Inc.*, 547 F. Supp. 211, 219 (D. Conn. 1981). "It is the party who controls what trademark the retailer uses that Congress was concerned with, not necessarily the party who supplies the petroleum." *Id.*

¶ 13. Whether the Act extends to subdistributors like Foti, when the trade-marked retailer's supply of product is not disrupted because the primary distributor continues to serve it, need not be resolved here. Under the PMPA, Foti had the burden to prove its franchise relationship. 15 U.S.C. § 2805(c) (stating that "franchisee shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship"); see also *Estate of Handy v. R.L. Vallee, Inc.*, 993 F. Supp. 236, 240 (D. Vt. 1998) (noting that "plaintiff bears the burden of establishing the existence of a franchise relationship"). Foti cites no authority for, and the court rejected, its proposition that, by selling Citgo fuel to a Citgo gas station, it must be a franchisee with authority over the trademark.

¶ 14. Not otherwise persuaded by Foti's claims of control over the Citgo trademark, the trial court's conclusion to the contrary is supported by its findings, and its findings have support in the record. Foti asserts, correctly, that the tankers bearing the Foti name were owned and operated by a different company, but it was not irrelevant for the court to notice that the owner-in-common of Foti and the transport company did not use the Citgo trademark. Foti points to testimony that it replaced Quick Stop's sign with the Citgo trademark, but Evans' marketing vice president testified further that Evans paid the cost of installing the new signs after Citgo supplied Evans with the materials, Citgo paid Evans a discount for the conversion, and then split the excess after cost with Foti. There was also testimony from Foti that, with Citgo's approval, Evans agreed to Foti doing business under the Citgo brand, but Evans testified that, while Foti was obligated to bring Citgo fuel to Quick Stop, it was Evans that held the Citgo license, and Quick Stop that was licensed to use the Citgo trademark through Evans.

¶ 15. Moreover, Foti confirmed that it was not a branded licensee of Citgo. Foti's explanation that it had an opportunity to secure a Citgo trademark, but did not do so the year before its arrangement with Evans, could reasonably suggest to the court that Foti was later hauling and reselling to Quick Stop without authority over the trademark.[3] On the other hand, it was undisputed that once Foti stopped supplying fuel to Quick Stop, the station did not stop using the Citgo brand — it simply relied on direct supply from Evans — supporting a conclusion that Evans, not Foti, controlled Quick Stop's use of the Citgo trademark.[4]

¶ 16. That Foti's testimony reflects his version of events does not mean that it must prevail over countervailing evidence. See *Wellford*, 2009 VT 100, ¶ 12 (explaining that trial court weighs credibility). The trial court was within its province as factfinder to credit Evans' testimony over Foti's, or to accord it more weight, and it is not for this Court to reweigh their testimony or otherwise retry the evidence. *Id.* Regardless of Foti's disagreement, therefore, it cannot be said that the court's finding that Foti had no authority over the Citgo trademark was wholly unsupported by the evidence. Moreover, affirming the court's finding that Foti had no authority over Citgo trademark, we likewise uphold the court's conclusion that Foti was not protected by the PMPA. Where, as here, one distributor claims the PMPA's protection based on its relationship with another distributor, the PMPA protects only a distributor authorized to use "a trademark which is owned or controlled . . . by a refiner which supplies motor fuel to the distributor which authorizes or permits such use." 15 U.S.C. § 2801(1)(A). For want of such authority over Citgo's trademark as granted by Evans, Foti had no refuge in the statute.

---

[3] Both parties agree that Foti was obliged to deliver and sell only Citgo product to Quick Stop, but this obligation does not by its own terms, necessarily, translate into control by Foti over the trademark's use.

[4] The dissent points to the retailer's contractual realignment from Foti to Evans as indicating a pre-existing franchise agreement between Foti and Quick Stop. The dissent posits that Quick Stop could not have used the Citgo trademark except through Foti, since it had no contract with Evans. This ignores, however, the no less unlikely scenario, also supported by the record, that Foti presented its customer, Quick Stop, to Evans as a retail outlet for Citgo brand gasoline to which Foti would resell that product without having any say over the trademark, and for which Evans paid to change the signage to the Citgo brand.

¶ 17. Foti's reliance on *Handy* to sustain its claimed franchise under the PMPA is misplaced. 993 F. Supp. 236. In *Handy*, the federal district court considered the PMPA in regard to a brand-name gasoline supply arrangement somewhat similar to the relationship between Evans, Foti, and Quick Stop. Handy owned a Mobil-brand gas station supplied with Mobil gasoline from Champlain Oil Company (the Company), that also owned the station's pumps and tanks, and which was supplied, in turn, by Vallee, Inc., a wholesale Mobil fuel distributor. *Id.* at 238. Handy notified wholesaler Vallee that the Company overcharged and delivered the wrong brand of fuel to the station. *Id.* at 239. The wholesaler terminated its Handy-bound deliveries to the Company and notified Handy that its Mobil signage would be removed. *Id.* The wholesaler then applied to build a new Mobil-brand retail outlet across the street from Handy's now defunct Mobil station. *Id.*

¶ 18. Handy brought suit under the PMPA, alleging that the wholesaler improperly terminated its franchise agreement with the company, and sought to enjoin the wholesaler from building the competing outlet. *Id.* The district court held that Handy was not protected under the PMPA because there was no franchise agreement between it and the wholesaler. See *id.* at 241 (explaining that "there was no contract between Handy and [wholesaler] Vallee, and therefore there was no franchise"). In the course of its ruling, the court observed that the agreement between the wholesaler and the distribution company "included a licensing arrangement allowing the 'downstream' party (Handy) to use the Mobil trademark at the Station. This agreement required [the Company] to assist Handy in operating a Mobil station according to Mobil standards." *Id.* at 238. Later, the court noted that it was "undisputed . . . that a franchise relationship existed between [the wholesaler] Vallee and [the distribution company] Champlain with respect to the motor fuel destined for the Station." *Id.* at 240. From these two passages, Foti contends that a franchise relationship must lie in the instant case between wholesaler Evans and distributor Foti regarding the fuel intended for Quick Stop.

¶ 19. What was observed and undisputed as fact in *Handy*, however, was specifically contested here. The court in *Handy* determined whether there was a wholesaler-to-station franchise relationship and, upon the station's failure to prove a direct contract with the wholesaler, the court ruled the station ineligible

for relief under the PMPA. *Id.* at 240. *Handy* offers no guidance, let alone precedent, on the instant question of whether a contractual franchise ran from the primary distributor, Evans, to the secondary distributor, Foti, granting the latter authority and control over .the Citgo trademark used at the Quick Stop gas station. Considering those questions of fact, the trial court here determined that Foti enjoyed no control over the trademark and so proved no such franchise agreement. *Handy* is inapposite.

*Affirmed.*

¶ 20. **Robinson, J.,** dissenting. The majority concludes that Foti Fuels, Inc. was not a "franchisee" protected by the Petroleum Marketing Practices Act (PMPA or Act) because it lacked authority to use or authorize use of the Citgo trademark. Because I conclude that the only possible conclusion on this record is that Foti was Evans' franchisee under their distribution agreement and was authorized, in turn, to permit Quick Stop's use of the Citgo brand, I respectfully dissent.

¶ 21. No one argues that Quick Stop was not a franchisee; it was selling Citgo brand fuel under a Citgo sign, and was indisputably "authorized or permitted, under a franchise, to use" the Citgo trademark. See 15 U.S.C. § 2801(4). But who is Quick Stop's franchisor?

¶ 22. Under the majority's holding, Foti would not qualify because it had no authority to use or authorize the use of the Citgo trademark. See *id.* § 2801(3) (" 'franchisor' means a refiner or distributor (as the case may be) who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel."); *Koylum, Inc. v. Peksen Realty Corp.*, 272 F.3d 138, 145 (2d Cir. 2001) (recognizing that the Act applies where the "distributor authorizes the retailer to sell motor fuel under a trademark which is owned or controlled by . . . a refiner which supplies motor fuel to the distributor" (quotation omitted)).

¶ 23. But the record reflects that prior to Evans' consummation of an agreement with Quick Stop after terminating its relationship with Foti, Evans had no direct contract with Quick Stop, and therefore could not have been Quick Stop's franchisor under the Act. See *Estate of Handy v. R.L. Vallee, Inc.*, 993 F. Supp. 236, 240 (D. Vt. 1998) (noting that "[u]nder the PMPA, a franchise must involve a direct contractual relationship between parties,"

and holding that retailer which received fuel under contract with subdistributor could not sue distributor with whom it had no direct contract and therefore no franchise relationship); accord *DuFresne's Auto Serv., Inc. v. Shell Oil Co.*, 992 F.2d 920, 927 (9th Cir. 1993) ("A franchise is a contract."); *Hutchens v. Eli Roberts Oil Co.*, 838 F.2d 1138, 1144 (11th Cir. 1988) ("We agree with every court that has considered the question and hold that there can be no franchise relationship under the PMPA in the absence of some direct contractual relationship."); *Rogue Valley Stations, Inc. v. Birk Oil Co.*, 568 F. Supp. 337, 343 (D. Or. 1983) ("A 'franchise' results only if there is a 'contract' between the parties."); *Brown v. American Petrofina Mktg., Inc.*, 555 F. Supp. 1327, 1332 (D. Fla. 1983) ("In order for a franchise to exist, there must be a contract — either written or oral — between the parties which pertains to the sale or distribution of motor fuel.").

¶ 24. Unless Quick Stop was acting as a Citgo dealer without legal authorization to do so — and nobody suggests that was the case — *somebody* had to confer upon Quick Stop the authority to sell Citgo-branded gas. That authority had to derive from a direct contract with another party authorized to confer the license to use the Citgo mark.

¶ 25. In support of its implicit conclusion that Evans had a direct franchisor-franchisee relationship with Quick Stop, the majority cites Daniel Evans' affirmation that Quick Stop was "licensed through [Evans]" to use the Citgo insignia. This assertion was true, but does not support the majority's conclusion. As Daniel Evans himself testified, the back-of-a-napkin agreement giving rise to this litigation was between *Evans* and *Foti*. Evans had the license to distribute Citgo-branded gas, and Foti had the retailer/client, namely, Quick Stop. Together, Evans and Foti put together a distribution network from Citgo to Quick Stop.

¶ 26. Nobody claims that Evans had any agreement of any kind directly with Quick Stop at the time in question, and there is no evidence in the record to support such a claim. Indeed, Daniel Evans' brother and partner, Douglas Evans, testified that it was only *after* the relationship with Foti deteriorated that Quik Stop's principal owner turned to Evans to become Quick Stop's distributor of Citgo fuel. See *Koylum*, 272 F.3d at 146 (whether the complaint alleges a violation of the [PMPA] "turns, in part, on

whether a franchise relationship existed *at the time of the events complained of.*" (emphasis added)).[5]

¶ 27. The majority is right that Quick Stop derived its license to use the Citgo mark through Evans, as Evans was the first link in the distribution chain through which the right to sell Citgo-branded gas, and to use the accompanying Citgo mark, passed. But the evidence in the record unequivocally points to Foti as the *last* link in that distribution chain to Quick Stop through which the retailer acquired its right to use the Citgo mark. Given the absence of any evidence of contractual privity between Quick Stop and Evans prior to Evans' termination of its arrangement with Foti, and given that Quick Stop's conversion to a Citgo-branded station arose as a result of the Evans-Foti agreement, Quick Stop *had* to have acquired its right to use the Citgo mark through Foti. The evidence does not support any other conclusion.

¶ 28. Likewise, the majority's observation that Evans was a branded licensee of Citgo and Foti was not prior to its arrangement with Evans, *ante,* ¶ 15, does not in any way undermine the clear evidence that Foti was a franchisee vis-à-vis Evans. The arrangement between Evans and Foti created a relatively informal, albeit unremarkable, distributor-to-distributor franchise relationship that supplied Citgo fuel to Foti and allowed Foti, in turn, to supply Citgo fuel to Quick Stop as a branded Citgo franchisee. See *Handy,* 993 F. Supp. at 238 (discussing oral agreement between fuel distributor and subdistributor to supply Mobil fuel for sale to Mobil service station); 15 U.S.C. § 2801(1)(A)(iii) (defining "franchise" to include a contract "between a distributor and another distributor"). Essential to this agreement was authorization to use or permit the use of the Citgo trademark. Moreover, given the absence of any evidence of an agreement between Quick Stop and Evans, Evans' partial payment for the cost of installing new Citgo signs at the Quick Stop — a step Evans took pursuant to its agreement with Foti — was not sufficient to establish a direct franchisor-franchisee relationship between Evans and Quick Stop. See *Handy,* 993 F. Supp. at 240-41 (finding that wholesale distributor's "occasional provision of materials to the Station and its supply of gasoline to [the Station's

---

[5] For this reason, the fact that Quick Stop continued selling Citgo-branded gas distributed directly by Evans after Foti's relationship with Quick Stop fell apart does not in any way support the majority's conclusion that Evans and Quick Stop had a direct franchise relationship *before* that time.

subdistributor did] not demonstrate the existence of a direct contract").

¶ 29. The majority's focus on the fact that the hauler contracted by Foti did not transport the fuel in trucks bearing the Citgo label is misplaced. Despite the majority's suggestion to the contrary, *ante*, ¶ 14, there is no dispute that Foti's role in this web of relationships was *not* merely that of a hauler. Foti's status as a franchisor under the PMPA is not evidenced by its own public display of a Citgo mark on its vehicles or those of its contracted haulers. Rather, we know that Foti was a franchisor to Quick Stop, and a franchisee to Evans because the only inferences supported by the evidence are that Foti authorized Quick Stop to use the Citgo mark in the context of the Foti-Quick Stop agreement, and that Foti derived its authority to do so from the Foti-Evans agreement. See 15 U.S.C. § 2801(3) (including in the definition of "franchisor" a distributor who authorizes a retailer to use a trademark in connection with the sale of motor fuel).

¶ 30. Although we generally defer to the trial court's findings unless clearly erroneous, *Waterbury Feed Co. v. O'Neil*, 2006 VT 126, ¶ 6, 181 Vt. 535, 915 A.2d 759 (mem.), there must be "some credible evidence to support a finding." *In re Hamm Mine Act 250 Jurisdiction*, 2009 VT 88, ¶ 9, 186 Vt. 590, 980 A.2d 286 (mem.). The trial court's conclusion that Foti was not a franchisee protected by the Act is unsupported by the law as applied to this record. I would therefore reverse the judgment and remand for further proceedings on Foti's counterclaim under the PMPA.