### In re Environmental Application of Barker Sargent Corporation

[313 A.2d 669]

No. 76-73

Present: **Barney, Smith, Keyser and Daley, JJ., and Larrow, Supr. J.**

Opinion Filed December 4, 1973

Motion for Reargument Denied December 19, 1973

David L. Cleary, Esq., of *Richard E. Davis Associates,* Barre, for Barker Sargent Corporation.

John J. Long, Jr., Esq., of *Black & Plante,* White River Junction, for Adjoining Property Owners.

**Smith, J.** This is an appeal by adjacent landowners from a decision of the Vermont Environmental Board granting a land use permit to a sanitary landfill in the Town of Thetford. The site is a rural area adjacent to Post Mills Village, the local airport, and two hundred and fifty feet to three hundred feet from the East Branch of the Ompompanoosuc River.

The case below was tried by the parties as being properly within the jurisdiction of the Vermont Environmental Board as a "Development" under 10 V.S.A. § 6001. Assuming, but not deciding that a landfill operation is a development under the provisions of the statute just cited, we proceed to a determination of the issues in the case. Important to the determination of the question presented is 10 V.S.A. § 6086:

Issuance of permit; conditions

(a) Before granting a permit the board or district commission shall find that the subdivision or development:

(1) Will not result in undue water or air pollution. In making this determination it shall at least consider: the elevation of land above sea level; and in relation to the flood plains, the nature of soils and subsoils and their ability to adequately support waste disposal; the slope of the land and its effect on effluents; the availability of streams for disposal of effluents; and the applicable health and water resources department regulations.

(2) Does have sufficient water available for the reasonably foreseeable needs of the subdivision or development.

(3) Will not cause an unreasonable burden on an existing water supply, if one is to be utilized.

(4) Will not cause unreasonable soil erosion or reduction in the capacity of the land to hold water so that a dangerous or unhealthy condition may result.

(5) Will not cause unreasonable highway congestion or unsafe conditions with respect to use of the highways existing or proposed.

(6) Will not cause an unreasonable burden on the ability of a municipality to provide educational services.

(7) Will not place an unreasonable burden on the ability of the local governments to provide municipal or governmental services.

(8) Will not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas.

(9) Is in conformance with a duly adopted development plan, land use plan or land capability plan.

(10) Is in conformance with any duly adopted local or regional plan under chapter 91 of Title 24.

Nine conclusions of law made by the Environmental Board have been certified to this Court on the record in the case for us to determine whether there was error in any or all of such findings made by the governmental agency.

10 V.S.A. § 6089 (c) provides:

No objection that has not been urged before the board may be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the board with respect to questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive.

"Resolution of controverted issues of fact is the responsibility of the trier of the facts subject only that such determination had appropriate evidentiary support." *Villeneuve* v. *Commissioner of Taxes*, 128 Vt. 356, 357, 264 A.2d 744 (1970).

 Only five of the nine issues certified by the Environmental Board have been briefed here by the appellants and our determination of the matter must be confined to the issues so raised by the brief of the appellants.

 The first briefed exception is to the finding of the Board:

The proposed development will not result in undue water or air pollution. The applicant shall comply with the attached condition which provides for the monitoring of the

quality of the water in the East Branch of the Ompompanoosuc River.

The burden of proof on this issue was on the applicant. 10 V.S.A. § 6088(a). The evidence before the Board was that the proposed landfill site consisted of seventeen acres, of which only four or five acres would be used for the sanitary landfill operation. The landfill was to consist of trenches eight feet in depth into which the waste material was to be compacted, covered with soil, and with the top layer so constructed that surface water would run off the area without permeating to the waste material beneath.

It was determined by the various departments of the Vermont Environmental Agency as well as the United States Department of Agriculture's Soil Conservation Service, after studies and site inspection, that the soil on the site and ground water conditions would not render the site unsuitable for a sanitary landfill.

The proposed landfill site is from twenty to twenty-five feet higher than the normal water level of the East Branch of the Ompompanoosuc River and at a distance of from two hundred and fifty to three hundred feet from such waterway. The applicant offered expert testimony that such landfill would not result in undue pollution of the river. Expert testimony offered by the parties agreed that there was no danger from bacterial contamination of the river, but the appellant's expert testified that at some future time there might be a deposit of minerals in the river from the eventual leaching of moisture from the landfill into the river. It was the testimony of Mr. King, a professional engineer called as an expert by the applicant, that if the landfill operation was operated as planned there would be no undue discharge of effluent into the waters of the State of Vermont, or any undue pollution thereof. Other professional experts, called as witnesses by the applicant, testified that the creation of the landfill would have no undue effect upon the waters of the river. As a precautionary measure, the Board did provide that the quality of the water in the river should be monitored yearly to determine if any undue pollution of the river would result from the landfill in the future.

It was the Board who was the trier of the fact and the

record disclosed substantial evidence in support of the finding of the Board. No error is found.

The appellant urges this Court to define "undue water pollution" to mean "any water pollution" by applying Chapter 11 of the Vermont Health Regulations. This point, as we ascertain from the record, was not raised below and we cannot consider it here. *Roberge* v. *Town of Troy*, 105 Vt. 134, 142, 163 A. 770 (1933).

The appellant also asserts that the Environmental Board did not find the proposed development to be in conformance with any local plan. The evidence before the Board was that at the time the application of the appellee was made for the sanitary landfill, no zoning ordinance was in effect in the Town of Thetford. Also, according to the testimony of a Selectman of the Town, the later adopted ordinance would have permitted the type of landfill applied for by the appellees.

The appellant briefs the claim that the Board was in error in finding that the proposed landfill would not create air pollution. It is the appellant's claim that air pollution can be caused by the creation of noise, and that such noise would be created by the use of a bulldozer at the landfill. Because of the proximity of the local airport to the landfill operation, appellant claims that the use of an explosive device would be necessary to drive birds away from the vicinity so as to avoid collisions between aircraft and birds.

There was ample evidence before the Board that any noise that would be caused by the bulldozer operation at the landfill would be of a subdued nature, audible to only a few residents, and at a level much lower than the noise created by aircraft using the nearby airport. Also, before the Board was evidence that a landfill operation did not attract flocks of birds, and that incidents of collisions between birds and aircraft were rare and unusual in Vermont.

The findings of the Board were supported by substantial evidence and are conclusive upon us. No error is found.

The appellant has excepted to that finding of the Board reading:

That possible traffic hazards on Vermont Route 113 are unrelated to and will not be affected by the landfill.

The appellant produced as a witness a Mr. Morse, a local resident, who testified that traffic on the roads near the proposed landfill had increased in recent years, particularly during the summer months, and that commercial traffic would increase if the proposed sanitary landfill is opened.

Extensive testimony on behalf of the applicant was given by Mr. Gleason M. Ayers, an engineer employed by the Vermont Highway Department. He testified that a permit had been given to the applicant for a drive, with special conditions attached to such permit. His opinion was that the proposed access road to the sanitary landfill "does not constitute an undue hazard to the driving public." Again, the weight of the evidence was for the determination of the Board, and such determination was supported by substantial evidence. We find no error.

■ The record shows that the parties were in general agreement that in the area near the proposed sanitary landfill there were numerous species of wildlife, scenic beauty and several historic sites. The findings of the Board were that none of these features would be adversely affected by the landfill. The appellant's briefed argument against these findings of the Board is that the evidence presented to the Board demonstrated that the landfill would have an adverse effect on the scenic and natural beauty of the area, aesthetics and historic sites.

There was evidence before the Board, and it so found, that the landfill will be in a meadow which is shielded from view of the entire area by the existing terrain and vegetation. The findings were supported by substantial evidence and no error is found.

■ It is apparent that the concern of the appellant nearby landowners to the proposed sanitary landfill is primarily based upon a very natural distaste on the part of any landowner to have a waste disposal operation of any kind located near his premises. In the case of *Latchis* v. *State Highway Board,* 120 Vt. 120, 124, 134 A.2d 191 (1957), involving the taking of land for highway purposes, the former Chief Justice Hulburd observed:

The argument that "the state doesn't need to take my land" merely because someone else's land might be taken has no validity. After all, if there is to be a road, it of necessity has to go somewhere, someone's property has to be taken.

It is equally true that when there must be a sanitary landfill, it has to be put somewhere. The fact that it may offend the feelings of adjacent landowners, so that the landfill should be located elsewhere for that reason alone, has no validity.

The Vermont Environmental Board found that the landfill, as proposed, had received a permit from the legislative body of the Town of Thetford, and that even in a subsequently enacted Town Plan for Thetford the by-laws, which supplement the Plan, allow as a conditional use a landfill as proposed here.

The Board held hearings in conformance with 10 V.S.A. § 6085, with due notice to all parties. At such hearings, evidence was received on all the conditions set forth in 10 V.S.A. § 6086. As we have determined in this opinion, the findings of the Board that the granting of the application will not result in a violation of any of the conditions set forth under 10 V.S.A. § 6086 were supported by substantial evidence on the record as a whole.

*The decision of the Vermont Environmental Board is sustained.*