### In re Petition of Weyerhaeuser Company

[315 A.2d 446]

No. 17-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

122

*Black & Plante,* White River Junction, for Weyerhaeuser Company.

*C. N. Monaghan, Esq.,* St. Albans, for the Vermont Legislative Board of the United Transportation Union.

**Smith, J.** This is an appeal by the Vermont Legislative Board of the United Transportation Union from an order of the Public Service Board granting a petition from the Weyerhaeuser Company for a variance under 30 V.S.A. § 1521 to construct a storage loading and unloading facility and platform that was to be six feet from the center line of the railroad tracks belonging to the Central Vermont Railway, Inc., running into the appellee's new warehouse located in Royalton, Vermont.

Weyerhaeuser Company petitioned the Public Service Board for an exception from the eight foot horizontal clearance re-

quired by 30 V.S.A. § 1521 between the center line of railroad track and a loading platform in its proposed warehouse in Royalton, Vermont. The concluding line of section 1521 provides that "[t]he public service board, after notice and hearing, may grant such further exceptions from the provisions of this section as may in its judgment be for the public interest."

The Board's granting of the exception, thereby approving a six foot clearance, has produced this appeal by the petitioner's opponent below, the Vermont Legislative Board of the United Transportation Union, a body concerned with the welfare of railroadmen. The Union's primary contentions are that the Board's findings and opinion were not supported by the evidence and that its order was the result of faulty judgment as to what is in the public interest.

 We must accept the Board's findings unless they are clearly erroneous. 30 V.S.A. § 11(b); *Petition of Green Mountain Power Corporation*, 131 Vt. 284, 305 A.2d 571, 575, 583 (1973). The record contains evidence that in the past warehousemen and their forklift trucks had fallen into the space between the edge of platforms and the side of railroad cars, and that warehousemen would be exposed to the danger created by this space for much greater lengths of time than railroadmen. Mr. Harvey, an employee of Central Vermont Railway, testified that the more narrow six foot clearance, which of course reduces the space between the edge of the platform and railroad car, would be safer for the warehousemen. There was no evidence of any injuries to railroadmen caused by the narrower clearance.

In the light of this evidence, the Board's findings and opinion that the safety of the warehousemen justified the granting of the exception are not clearly erroneous.

Further, the Board's order shows that it did not overlook the need to protect the railroadmen. The order granting the exception is conditional. Weyerhaeuser is required to erect close clearance warning signs and to install sufficient illumination, so that the trainman riding the lead car into the warehouse will not be surprised or endangered by the narrower clearance. The site, upon completion of construc-

tion, will be inspected by representatives of the Board, Weyerhaeuser, and the Union.

■ The Union nevertheless contends that the order cannot stand because the safety of the warehousemen is not a factor to be considered in determining what is "for the public interest." This contention, and the arguments in support of it, are fundamentally unsound. Warehousemen are members of the public. The Board, in supervising the operation of railroads, is empowered to consider the safety of the public. See 30 V.S.A. § 806(5), (9).

■ The fact that 30 V.S.A. § 1521 is found in a chapter headed "Railroads—Operation" does not mean, as the Union argues, that section 1521 is solely for the benefit of railroad operating men. Most of the sections in this chapter "were manifestly enacted for the safety, protection and general benefit of the public." *Osgood* v. *Central Vermont Ry. Co.*, 77 Vt. 334, 340, 60 A. 137 (1905). And section 1521, as already mentioned, contains precise directions that the "public interest" is to be considered.

■ The fact that the safety of warehousemen is also governed by statutory provisions such as 21 V.S.A. §§ 111–124 (now 21 V.S.A. § 201 *et seq.*, Vermont's adoption of the Occupational Safety and Health Act of 1970) does not mean that the Board could not also consider their safety. 21 V.S.A. § 111 (now section 201(a)) provides that it is the policy of the State of Vermont that an employer shall furnish his employees with a safe place to work. Weyerhaeuser believed that its premises would be a safer place to work in if the horizontal clearance between the platform and the edges of railroad cars was reduced. The only way it could legally reduce this clearance was to petition the Board under 30 V.S.A. § 1521.

Since the safety of the warehousemen was a factor which the Board could consider in determining what is "for the public interest," and since the granting of the public interest exception is clearly not unreasonable or unsupportable as a matter of law, the order of the Board must be sustained. See *In re Hemco*, 129 Vt. 534, 537, 283 A.2d 246 (1971).

The Union has abandoned its earlier challenges to certain procedural errors allegedly committed by the Board, and

hence we need not discuss them. *In re Barker Sargent Corporation*, 132 Vt. 42, 313 A.2d 669 (1973).

*The order of the Public Service Board granting the exception to Weyerhaeuser is sustained.*