STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 32-3-14 Vtec |
|---|---|
| Zaremba Group Dollar General CU Permit | DECISION IN ON-THE-RECORD<br>APPEAL |

This on-the-record proceeding relates to a proposal by Zaremba Program Development, LLC, f/k/a Zaremba Group, LLC (Applicant) to construct and operate a 9,100 square-foot retail store, parking lot, and related infrastructure (the Project) in the Town of Chester, Vermont (the Town). The Town of Chester Development Review Board (the DRB) initially granted Applicant's conditional use permit for the Project by written decision dated April 16, 2012 (the initial DRB decision). A group of twenty-four individuals (Appellants) appealed that permit to this Court. In a June 12, 2013 decision, the Court remanded the matter to the DRB with instructions to clarify its findings of fact and conclusions of law. In re Zaremba Group Dollar General, No. 66-5-12 Vtec (Vt. Super. Ct. Envtl. Div. June 12, 2013) (Walsh, J.). Without taking new evidence, the DRB issued its Supplemental Findings of Fact, Conclusions of Law, and Decision on Remand on February 4, 2014 (the supplemental decision), unanimously reaffirming the initial decision approving the Project. Appellants timely filed a Notice of Appeal of the supplemental decision on March 3, 2014.

In reviewing the merits of this on-the-record appeal, the Court has considered the parties' briefs and the record, consisting of DRB's initial and supplemental decisions, any writings or exhibits considered by the DRB, and the transcript of the proceedings below, as described in Rule 5(h)(1)(A) of the Vermont Rules for Environmental Court Proceedings (V.R.E.C.P.).

Appellants are represented by James A. Dumont, Esq. and include Shawn Cunningham, Claudio Veliz, Scott Morgan, Phillisa Jones Prescott, Georgette Thomas, Brian Morris, Karen Morris, Laura Thomas, Diana Ashworth, Gary Farmer, Michele Bargefrede, Carrie King, Gary King, Jackie Restmeyer, Hannah Monier, Sarah Yake, Sharon Baker, Jessie Alon, Michael Alon,

1

Wayne LaFevre, Donald Payne, Stephanie Witing-Payne, Gail S. Gibbons, and Robert D. Gibbons.  Applicant is represented by David R. Cooper, Esq. and Alan Biederman, Esq.

## Background

Applicant proposes to develop a single-story, 9,100 square-foot Dollar General retail store and a 31-space paved parking lot on a 1.37 acre lot at 219 Main Street (Route 103), adjacent to the existing Zachary's Restaurant and located within the Residential/Commercial District (the R/C district) of the Town of Chester.  As designed, the Project will resemble a barn with faux windows on the street-facing façade, a hayloft-style door, a cupola, and a peaked metal standing seam roof at a 5/12 pitch.  The exterior will be painted or stained a natural earth tone.  All mechanicals and dumpsters will be located behind the Project along the north rear corner of the lot.  The Project will share existing access with Zachary's Restaurant, which Applicant will relocate 90 feet to the south.  Additionally, Applicant will replace sidewalks and granite curbing along the entire length of the street-facing boundary and will construct a pedestrian walkway connecting the sidewalk with the Project's front entrance.  Applicant estimates that the Project will generate 47 primary and 24 pass-by vehicular trips midweek and 68 primary and 24 pass-by vehicular trips on Saturdays.

On July 1, 2011, Applicant submitted a conditional use permit application to the DRB. The DRB convened a properly warned public hearing on August 8, 2011, followed by five subsequent meetings, the final of which was held on March 12, 2012.  On April 16, 2012, the DRB issued a decision granting a conditional use permit to Applicant, subject to 35 conditions. The DRB concluded that the Project does not adversely affect the criterion for conditional uses under § 9.4(c) of the Town of Chester Zoning Regulations (Regulations), including the general, specific, and performance standards under subsections (1), (2), and (3), as well as the special criteria under subsection (4).

On May 12, 2012, Appellants timely appealed the DRB's initial decision to this Court. We remanded the matter to the DRB for clarification of findings of fact and conclusions of law regarding subsections (1)(B), addressing the Project's effect on the character of the area affected, (1)(C), addressing traffic, and (4)(A), addressing the Project's harmony with the over-

all New England architectural appearance of the area.  In re Zaremba Group Dollar General, No. 66-5-12 Vtec (Vt. Super. Ct. Envtl. Div. June 12, 2013) (Walsh, J.).

Without taking new evidence and after six deliberative sessions, the DRB issued its supplemental decision on February 4, 2014.  The supplemental decision unanimously reaffirmed the DBR's initial decision granting Applicant's conditional use permit.  On March 3, 2014 Appellants timely appealed the DRB's supplemental decision to this Court.

## Discussion

Our review of the DRB's supplemental decision is limited to addressing the questions raised by Appellants in their Statement of Questions.  See V.R.E.C.P. 5(f).  Appellants' arguments focus on the DRB's legal conclusions that the Project does not adversely effect the character of the area affected, a general conditional use criteria under the Regulations (§ 9.4(c)(1)(B)).  Appellants' question whether the DRB erred by disagreeing with testimony of their expert witness related to the character of the area and the Project's impact on that character.  Additionally, Appellants question whether the DRB approved the conditional use permit without adequate findings of fact or conclusions of law specific to the requirements for conditional use approval, in violation of 24 V.S.A. § 1209(b) & (c).  Appellants' Statement of Questions encompasses several other arguments which they fail to address in their brief.  To the extent these arguments can be addressed concurrently with those issues properly briefed, we address them below.[1]  To the extent Appellants raised issues without discussion or argument in the brief, those issues have been waived.[2]  See In re Okemo LLC PUD Amendment, No. 221-11-09 Vtec, slip op. at 8 n.5 (Vt. Super. Ct. Envtl. Div. Apr. 5, 2012) (Durkin, J.) (citing McAdams v. Town of Barnard, 2007 VT 61, ¶ 8, 182 Vt. 259 ("Arguments not briefed are waived.")); In re T.A., 166 Vt. 625, 626 (1997) (mem.) ("Issues not briefed are waived.").

---

[1] This includes Appellants' Questions 2, 5, 7, 8, 10, 12, and 13.

[2] Specifically, Appellants' Question 18 in its entirety and Question 19 in part.  Question 18 asks whether the Applicant waived all objections to the specificity and constitutionality of the zoning ordinance by failing to file a cross-appeal.  Question 19 asks whether the DRB hearings and decisions fail to meet the standards of 24 V.S.A. §§ 1204, 1206, 1207, and 1209.  To the extent Appellants' briefed §§ 1206 and 1209, we address them below.  Without further explanation by Appellants, however, we cannot address the DRB's compliance with § 1204, with regards to notice, and § 1207, with regards to ex parte communications.  To the extent, Appellants' intend to question the propriety of the DRB's decision making process, we address this relative to issue 2 below.

For the purposes of analysis, Appellants' Statement of Questions can be paraphrased, grouped, and renumbered as asking whether the DRB erred by taking the following actions:

1)  supporting findings of fact with evidence other than the testimony of Appellants' expert witness, Jean Vissering, without articulating its reasoning for doing so in violation of 24 V.S.A. § 1209(b);[3]

2)  supporting findings of fact with evidence outside the record in violation of 24 V.S.A. §§ 1206(a);[4]

3)  basing conclusions of law on findings of fact supported by evidence outside the record in violation of 24 V.S.A. § 1206(a) and without articulating its reasoning for doing so in violation of 24 V.S.A. § 1209(b);[5]

4)  relying on 24 V.S.A. § 4414 and the Chester Town Plan to define the character of the area pursuant to § 9.4(c)(1)(B) rather than the standards established in the Regulations;[6] and

5)  granting the conditional use permit despite Applicant's failure to meet the requisite burden of proof.[7]

## I.        Standard of Review

A municipality that elects to make its land use determinations subject to on-the-record review must follow the procedural requirements established in the Municipal Administrative Procedures Act (MAPA).  See 24 V.S.A. § 4471(b); In re Brandon Plaza Conditional Use Permit, No. 128-8-10 Vtec, slip op. at 6–7 (Vt. Super. Ct. Envtl. Div. Mar. 26, 2012) (Walsh, J.).  Pursuant to MAPA, the DRB's decision must be "in writing and shall separately state findings of fact and conclusions of law."  24 V.S.A. § 1209(a).  The DRB's findings of fact must "explicitly and concisely restate the underlying facts that support the decision" and be "based exclusively on evidence" in the record.  Id. at § 1209(b).  The DRB's conclusions of law must be based on those findings.  Id. at § 1209(c).

In an on-the-record appeal this Court's review is limited to briefs submitted by the parties and the record, consisting of the DRB's decision, any writings or exhibits considered by

---

[3] Appellants' Questions 3, 4, and 14–17.
[4] Appellants' Questions 3, 4, 6, 15, and 17.
[5] Appellants' Questions 14–17.
[6] Appellants' Questions 1 and 11.
[7] Appellants' Question 9.

the DRB, and the transcript of the proceedings below.  V.R.E.C.P. 5(h); see In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). When considering the decision below, we do not take new evidence or complete our own determination of the facts.  We will uphold the municipal panel's findings of fact if they are supported by substantial evidence in the record.  See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568.

In examining whether there is substantial evidence in the record, we do not "make our own assessment of the credibility of witness testimony or reweigh conflicting evidence in the record."  Brandon Plaza Conditional Use Permit, No. 128-8-10 Vtec, slip op. at 6–7 (citing Devers-Scott v. Office of Professional Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248).  Rather, we determine whether the record contains relevant information that a "reasonable person could accept . . . as adequate" support for those factual findings.  Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

If we determine the DRB's findings to be sufficient, the Court will review the DRB's legal conclusions de novo.  In re Stowe Highlands Resort PUD to PRD Appl., 2009 VT 76, ¶ 7, 186 Vt. 568 (mem.).  This review is without deference if such conclusions are outside the DRB's area of expertise.  Id.

II.     **Findings of Fact**

As indicated above in issues 1 & 2, Appellants contend that the DRB's supplemental decision is deficient because it does not include adequate findings of fact specific to the Regulation's conditional use requirements as required under MAPA, § 1209(b).  Specifically, Appellants challenge the DRB's factual findings related to Regulation § 9.4(c)(1)(B), which requires the DRB to approve conditional uses only were such uses do not adversely affect "[t]he character of the area affected."[8]

In answering Appellants' questions, we first examine the record for evidence supporting the DRB's findings.  We then consider whether the DRB relied on evidence outside the record to

---

[8] Although not briefed, Appellants' Question 5 relies on this argument to challenge the DRB's findings relevant to the Special Criteria under Regulations § 9.4(c)(4)(A).  Because the issue is not briefed, and because our analysis applies to the DRB's findings of fact in general, we do not address the specifics of this Question in detail.

support its findings.  Finally, we examine the record for evidence that a reasonable person could accept as adequate to support those findings.

### a. Evidence in the record supporting the DRB's factual findings

MAPA requires the DRB to base its findings "exclusively on evidence" in the record.  24 V.S.A. § 1209(b).  Appellants argue that the DRB failed to comply with § 1209(b) because it did not specifically acknowledge testimony offered by Appellants' expert witness, Jean Vissering, in its findings regarding the character of the area affected.  Appellants do not contend that disregarding Ms. Vissering's testimony itself was an error of law; rather, they argue that the DRB erred by failing to articulate evidence in the record "to support the conclusion that the expert witness is unworthy of belief."  (Appellants Br. at 14, July 2, 2014).  Absent such an explanation, they assert, the DRB's findings are "so vague that the reader has no way of knowing if the DRB disagreed with Ms. Vissering's factual observations or her analysis of what she had observed."  Id. at 22.

Section 1209(b) requires only that the DRB's findings of fact be based exclusively on evidence in the record.  Nothing in this section mandates an explanation of the DRB's reasons for basing its findings on certain evidence at the expense of other evidence.  As stated above, it is not for this Court to review the process by which the DRB weighed evidence or its reasons for relying on that evidence in determining findings of fact.  See In re Group Five Invs. CU Permit, 2014 VT 14, ¶ 4; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004 term) (unpublished mem.); Devers-Scott, 2007 VT 4, ¶ 6.  Where, as in this appeal, the record contains conflicting evidence, "its resolution falls within the [DRB's] jurisdiction, for the [DRB] is the proper trier of fact."  In re Wildlife Wonderland, Inc., 133 Vt. 507, 511 (1975) (citing In re Barker Sargent Corp., 132 Vt. 42, 46–47 (1973)).  It is therefore within the DRB's authority "to believe all of the testimony of any witness, or to believe it in part and disbelieve it in part, or to reject it altogether."  Id. (citing Ohland v. Dubay, 133 Vt. 300, 303 (1975)).  While § 1209(b) requires the DRB's findings to be supported with evidence from the record, it does not impose the additional burden of requiring the DRB to justify its decision to disregard certain evidence in favor of other evidence.  Therefore, although the DRB did not justify its decision to rely on evidence other than Ms. Vissering's testimony, this does not render its factual findings legally

6

deficient. As such, the DRB did not err in failing to explain why it did not accept Ms. Vissering's opinion.

**b.  The DRB's reliance on evidence outside the record to support its factual findings**

MAPA also requires that all hearing testimony "be made under oath or affirmation." 24 V.S.A. § 1206(a). Appellants suggest that by rejecting Ms. Vissering's testimony without explanation, the DRB may have relied "on an off-the-record opinion held by the fact-finder" regarding the validity or importance of her testimony.[9] (Appellants Br. at 19, July 2, 2014). Because the character of the area "is not generally known within the [DRB's] territorial jurisdiction," they argue that the DRB's opinion regarding the weight of relevant evidence "does not fall within the definition of adjudicative facts of which a tribunal can take judicial notice." Id.

As stated above, it is within the DRB's jurisdiction to resolve conflicting evidence. Wildlife Wonderland, Inc., 133 Vt. at 511. Furthermore, it is both the DRB's right and responsibility to weigh the evidence and to either accept a witness's opinion, to accept it in part, or to reject it. Id. (citing Ohland v. Dubay, 133 Vt. 300, 303 (1975)). Therefore, while § 1206(a) requires testimony to be made under oath, it does not contemplate the DRB's act of weighing such testimony. As the DRB is authorized to weigh conflicting evidence evinces its authority to render its own, off-the-record opinions as a fact-finder, regardless of § 1206(a).

**c. Substantial evidence supporting the DRB's factual findings**

We will uphold the DRB's findings if they are supported by substantial evidence in the record. See Stowe Highlands Resort, 2009 VT 76, ¶ 7. Appellants contend that the record lacks relevant information that a reasonable person could accept as adequate support for the DRB's findings regarding the character of the area affected. (Appellants Br. at 14, July 2, 2014). Appellants suggest that the DRB's findings of fact are vague, inconsistent with evidence in the record, and/or unsupported by evidence in the record, and that a reasonable person could not therefore find support for such findings in the record. Id. at 14, 21, 24.

---

[9] In Question 7, Appellants ask whether the DRB further erred by rejecting Ms. Vissering's testimony without explanation and "without providing notice to appellants of those alleged facts, without providing any opportunity for cross-examination as to those alleged facts, and without providing any opportunity to appellants to respond to those alleged facts . . ." Appellants did not brief this issue. As discussed below, the DRB is authorized to weigh conflicting evidence and is not required to provide notice or opportunity to Appellants to respond to this process.

As stated above, findings of fact are supported by substantial evidence if the record contains relevant information that a "reasonable person could accept . . . as adequate" support for those factual findings. Devers-Scott, 2007 VT 4, ¶ 6. We will consider findings "sufficient if they dispose of the issues presented and make a clear statement of the trier's decision and the basis upon which that decision was made." See Harrington v. Dep't of Emp't Sec., 142 Vt. 340, 344 (1982). We will therefore uphold findings if the DRB clearly stated the finding and if a reasonable person could accept the evidence as adequate support for the finding.

First, we conclude that the DRB clearly stated its findings relevant to the character of the area affected. Appellants' brief references the importance of findings regarding roof pitch, parking configuration, setback distance, and structure size. Looking to the supplemental decision, the DRB clearly stated its findings relative to these design elements. Findings 124, 125, 129–132, 139, and 142–144 describe the roofs of nearby commercial structures—including the Stone House Antique Center, the United States Post Office, the American Legion, the Pizza Stone Restaurant, the Chester Hardware Store, the Jiffy Mart, and the Craft Gallery—as "pitched." Findings 116-122 describe parking configurations in the area as "varied," located along the front of Zachary's Restaurant, the rear of the American Legion, the side of the Post Office, Craft Gallery, and Windsor Southwest Supervisory Union Office, and the front and side of the Sunoco Gas Station, Chester Hardware Store, Stone House Antique Center, Country Girl Diner, Jiffy Mart, and Jack's Diner. Finding 104 describes "[b]uildings in the area [as] setback from the road at varying distances with some structures being closer to the public highway than others." Finally, findings 99-102 describe the varying sizes of commercial structures in the area, including the 1,680 square-foot Jiffy Mart, the 3,000 square-foot Zachary's Restaurant, the 6,000 square-foot Chester Hardware Store, and the 15,540 square-foot Stone House Antique Center.

Next, we conclude that a reasonable person could accept the evidence in the record as adequate support for these findings. Exhibits B, G, I, and S consist of photographs of commercial structures in the surrounding area and offer visual evidence of pitched roofs and varied setbacks, sizes and shapes, and parking configurations of surrounding structures. A

reasonable person would accept these photographs as adequate support for the DRB's findings that the area is defined by variations in roof pitch, parking configurations, setbacks, and size.

Offering further support for this conclusion, Ms. Vissering's testimony in the hearing transcripts supports the DRB's findings that variation defines the character of the area. For example, Ms. Vissering testified that although the "classic steep pitch" is typical of roofs in Vermont, there are "a number of different roof styles" in the surrounding area. Transcript of DRB Hearing Re: Conditional Use Application No. 430 at 41-43 (Nov. 14, 2011). She also testified about the single-story Country Girl Diner and Zachary's Pizza, both of which are setback from the street and have parking configurations with parking in front of the building. Id. at 19, 35, 38, 39, & 46.

Appellants suggest that, in light of Ms. Vissering's expert opinion that the character of the area is defined by structures with steeply pitched roofs, parking to the side or rear, and limited setbacks, a reasonable person could not accept conflicting evidence in the record as adequate support for the DRB's findings that the character of the area includes roofs with varying degrees of pitch, parking in front, to the side, and in the rear of buildings, and both small and larger setbacks. This, however, is not the correct interpretation of the legal standard. To the extent that Appellants challenge the credibility of the evidence supporting the DRB's findings of fact, it is within the province of the fact-finder to weigh such evidence. See Evans Grp., Inc. v. Foti, 2012 VT 77, ¶ 16, 192 Vt. 311 (leaving to factfinder issues of weight and credibility). That the DRB disagreed with Ms. Vissering's testimony is therefore irrelevant to this analysis. Because a reasonable person could accept the aforementioned evidence as adequate support for the DRB's findings regarding the character of the area, it is immaterial that those findings are not wholly supported by Ms. Vissering's opinions.

Having determined that the DRB clearly articulated its findings of fact, that it based those findings on evidence in the record, and that the evidence provides substantial support for the findings, we therefore uphold the DRB's findings of fact regarding the character of the area.

## II. Conclusions of Law

As indicated above in issue 3, Appellants argue that the DRB's decision is deficient because it does not include adequate conclusions of law specific to the Regulation's conditional

use requirements as required under MAPA, § 1209(c). Specifically, Appellants challenge the DRB's legal conclusions related to Regulations § 9.4(c)(1)(B) which requires the DRB to approve conditional uses only were such uses do not adversely affect "[t]he character of the area affected."

First, we will consider the DRB's legal conclusions regarding the character of the area and the Project's potential impact on that character. See In re Williams Amended CU Permit, No. 40-4-13 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Jan. 10, 2014) (Durkin, J.) (requiring conclusions of law contain "a minimally necessary explanation" of the DRB's legal conclusion). Then, we will determine whether those conclusions are based on findings of fact. 24 V.S.A. § 1209(c) ("Conclusions of law shall be based on the findings of fact.").

As with the DRB's findings of fact, Appellants' argue that the because the DRB's findings do not address or acknowledge Ms. Vissering's opinion about the importance of the pattern of architectural elements, in favor of evidence regarding variation among such elements, the relevant legal conclusions are not supported by findings of fact. (Appellants Br. at 14, July 2, 2014). Similarly, Appellants suggest that the DRB's legal conclusions may have been based on "an off-the-record opinion held by the fact-finder" regarding the validity or importance of Ms. Vissering's testimony, and thus short of the standard under § 1206(a) requiring all testimony be made by parties or witnesses under oath. Id. at 19. Having determined that the DRB is not required to justify its decisions to disregard certain evidence in its findings and that it is within the DRB's authority to weigh conflicting evidence when making such findings, we find no support for Appellants' argument that the corresponding legal conclusions are deficient for the same reasons.

We now turn to the specific legal conclusions challenged by Appellants, including the DRB's conclusions related to the definition of the character of the area and the DRB's descriptions of the character of the area affected, both relative to specific design elements and the Project's conformity with that character. We will address the relevant conclusions in that order. It is important to note that Appellants do not challenge the legal basis for the conclusions, only whether they were supported by facts as required by MAPA § 1209(c) and on-the-record testimony as required by MAPA § 1206(a).

10

### a. **Conclusions Related to the Definition of the Character of the Area**

In conclusion I, the DRB analyzed the Regulations and established the specific legal standard to determine the character of the area affected. Because the Regulations themselves do not define the "character of the area affected," and because "the language of Regulations § 9.4(c)(1)(B) closely tracks the language from the enabling authority [found at 24 V.S.A § 4414(3)(A)(ii)]," the DRB concluded that it could "consider the requirements of Section 9.4(c)(1)(B) to be synonymous with the enabling statute."

Looking to the enabling statute, the character of the area affected is "defined by the purpose or purposes of the zoning district within which the project is located, and specifically stated policies and standards of municipal plan."[10] The DRB determined in conclusion J that "[a]lthough the [Regulations] itself does not provide a specific statement of purpose for the RC District in Section 6.6, the Town Plan does," and defines the character of the area relative to the existing range of uses and architectural appearances of buildings in the immediate area. These conclusions establish the specific legal standard and are a correct reading and interpretation of the Regulations and enabling statute. There was, therefore, no error by the DRB in establishing a definition of the character of the area based on the existing range of uses and architectural styles. Furthermore, because conclusions I and J establish the relevant legal standard rather than a legal conclusion, we do not consider them under § 1209(c).

### b. **Conclusions Related to the Character of the Area**

In conclusions F and H, the DRB made determinations about the character of the area, specifically addressing parking configurations, building sizes, and topography. In conclusion F, the DRB concluded that parking configurations in the area are varied, some with "parking in front of the structure, some on the side, some in the rear and some provide a combination of these parking arrangements." In conclusion H, the DRB concluded that the size of nearby structures are "varied and include[ing] large buildings such as the American Legion and the Stone House Antique Structures. Other structures in the area are smaller in scale, examples

---

[10] As noted below, Appellants argue that § 4414 was not in effect at the time of the application and therefore it was inappropriate for the DRB to rely on this statute. This is incorrect. Section 4414 was amended to include the relevant language in 2004. The predecessor statute, 24 V.S.A. § 4407, that Appellants suggest we apply was repealed in 2003.

being the private residences and the Jiffy Mart." The DRB also made conclusions about the topography of the area, which is "fairly flat and level."

In conclusion E, the DRB similarly summarized the character of the area relative to the building's architectural features:

> The architectural styles of the current structures associated with these uses in this area include: 1 story, 1 ½ story and 2 story buildings constructed with a variety of roof pitches and roofing materials. Some structures in the area are sided with clapboards, others are sided with brick, masonry, vertical and wood siding, metal siding or a combination of wood and brick. Structures in the area have been built with varied window styles such as double hung windows with the appearance of small panes, double hung 1 over 1, picture windows and plate glass style windows. Current structures in the area also feature varying architectural elements such as covered porches, chimneys, cupolas and shutters. Setbacks of the existing structures in the area are varied, with some structures closer to the roadway than others.

These conclusions incorporate the factual findings outlined above that are relevant to the existing range of uses and architectural appearances in the immediate area. Because the DRB applied these findings to the legal standard established in conclusions I and J, we find the DRB's conclusions of law regarding the character of the area to be sufficient.

### c. Conclusions Related to the Project's Conformity with the Character of the Area

In conclusions M, L, K, and N, the DRB made determinations about the Project's conformity with the character of the area affected. In conclusion M, the DRB determined that the Project "falls within the existing range of compatible uses" and "will not adversely affect the character of the area." It went on to explain how the Project falls within the existing range relative to the "architectural appearance, structure size, parking configuration, setbacks, lot coverages, and landscaping styles associated with those uses currently found in the area."

Likewise, in conclusion L the DRB determined that the Project "is consistent with other uses in the immediate area." The DRB then explained the relationship between the Project and other uses in the area, stating that the Project:

> [W]ill be smaller than some structures in the area and larger than others. The proposed Dollar General Store is setback from the roadway 93 to 119 feet, which is further back from the roadway than some, but not as far back as others. Parking proposed by the applicant includes spaces in the front and side, a parking configuration which is not dissimilar from other nearby properties with

12

commercial uses. The architectural style of the building with its pitched roof, cupola, horizontal clapboard siding, trim work and brick facing is similar to other nearby structures. Landscaping proposed by the Applicant including the planting of deciduous trees, shrubs and grassy lawn areas which are in keeping with the landscape styles in the area and have been modified by the application to maintain the character of the area.

In conclusion K, the DRB determined that Project "is consistent with keeping commercial development within the mixed use village center where there is easy access to Chester's most densely populated areas and town water and sewer is available." Furthermore, it concluded that "the project will not detract from the historic character and aesthetic qualities of the village centers, particularly given its location outside the Village Historic District." In conclusion N the DRB concluded that the project "will be consistent with the character of the area as it currently exists and as contemplated in the RC District."

Also in conclusion N, the DRB addresses Ms. Vissering's opinions about the character of the area. The DRB acknowledges Ms. Vissering's qualifications, her testimony about the legal standard, and her opinions about the Project's impact on those standards. However, the DRB states that it does "not believe expert testimony is a necessary component of proof in the area of use compatibility or architectural appearance given the substantial record of other uses and structural appearances on the record in the area from which we can make our own determination," and "respectfully disagrees with her opinion that the project as proposed will be an 'eyesore' or that it will present a subpar style and appearance at the gateway to the historic village center."

As discussed in greater detail above, these conclusions incorporate the relevant factual findings regarding the Project's location in the R/C District and its size, setback, parking configuration, and architectural design elements, as well as the variation among these design elements within the surrounding area. Likewise, by "respectfully declin[ing] to accept Ms. Vissering's opinions as [the DRB's] own on the issues of compatibility with the character of the area or whether the project adheres harmoniously to the overall New England architectural appearance of Chester," the DRB again applies the relevant facts to the legal standard. Furthermore, the DRB applied these findings to the legal standard, explaining that because

there are buildings in the area with varying architectural features, some of which are shared by the Project design, the Project will be consistent with the character of the area.

For these reasons, we find the DRB's conclusions of law regarding the character of the area to be sufficient. Appellants do not challenge the legal conclusions themselves, and therefore we uphold those conclusions.

## III. Procedural Issues

As indicated in issues 4 & 5, Appellants contend that the DRB's supplemental decision contains several procedural flaws. [11] First, Appellants argue that the DRB incorrectly relied on the enabling statute for a definition of character of the area.[12] Second, Appellants argue that the DRB erred by granting the conditional use permit because Applicant failed to meet the requisite burden of proof.

Addressing the first argument, Appellants argue that the DRB erroneously relied on 24 V.S.A. § 4414(3)(A)(ii), which defines the character of the area by the purposes of the zoning district and the policies and purposes of the Town Plan, because the conditional use permit application was filed before the most recent legislative amendment to § 4414 went into effect. (Appellants Br. at 25, July 2, 2014). Appellants misrepresent the effective date of the enabling legislation, however. In 2004, the Permit Reform Act repealed 24 V.S.A. § 4407 and relocated the conditional use enabling provision to § 4414(3). Section 4414(3) has been the controlling section since that time. Appellants mistakenly rely on the savings clause of that Act, 24 V.S.A. § 4481, which states that the Act would not invalidate a conflicting zoning or subdivision regulation but that all regulations "shall be amended to conform with the provisions of [the

---

[11] Appellants' Question 10 asks whether the DRB erred by relying on the Town Plan without providing notice to Appellants, pursuant to 24 V.S.A. § 1204. Although § 1204(b) requires that the DRB provide Appellants with an opportunity to respond to and present evidence, this applies specifically to hearings and not to the DRB's legal conclusions or the deliberative process. We also note that Appellants' Questions 12 and 13 ask whether the DRB erred in its interpretation of both the Regulations and the Town Plan. Appellants, however, failed to brief these issues. We interpret zoning ordinances according to the general rules of statutory construction and will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." See In re Champlain Oil Co. Conditional Use Application, 2014 VT 19, ¶ 7; In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. Absent guidance from Appellants describing how the DRB erred in its interpretation, we do not find support for this argument. Regarding the specific arguments raised by Appellants we find that the DRB properly interpreted the Regulations and the Town Plan.

[12] Although not briefed, Appellants' Question 2 asks whether the DRB incorrectly relied on the enabling statute for a definition of the Center of Chester under § 9.4(c)(4)(A). Because our analysis is the same for both subsection (1)(B) and (4)(A), we reach the same conclusion that the DRB's consideration of the enabling statute was proper.

14

amended Chapter 117] by September 1, 2011." Contrary to Appellants' argument, section 4481 does not delay the effects of § 4414 until September 1, 2011. See In re Weyden, No. 23-2-06 Vtec, slip op. at 9–10 (Vt. Envtl. Ct. Nov. 29, 2006) (Wright, J.) (using 24 V.S.A. § 4414(3)(A)(ii) to define "character of an area"). We therefore find that the DRB did not err in relying on § 4414.

Regardless of the date § 4414 went into effect, Appellants argue the DRB erred in relying on language from the Town Plan, as directed by § 4414(A)(ii), because language in a Town Plan cannot be used to decide a zoning matter unless the Court determines that the relevant portion is intended to be aspirational or mandatory. Appellants Brief, at 25 (July 2, 2014). The DRB did not, however, rely on language from the Town Plan to decide whether to grant or deny the conditional use permit. Rather, the DRB referred to the Town Plan, as directed by the enabling statute, for guidance in establishing a definition for the character of the area affected. Such reliance is legally permissible and appropriate in this context. See Weyden, No. 23-2-06 Vtec, slip op. at 9–10 (considering aspirational municipal plan provisions when reviewing effect on character of the area under § 4414(3)(A)(ii) in on the record appeal).

Addressing the second argument, Appellants contend that the DRB erred in granting the conditional use permit because Applicant bore the burden of production and persuasion to demonstrate by a preponderance of the evidence that the Project would not adversely impact the character of the area. (Appellants Br. at 26, July 2, 2014). Appellants argue that in its supplemental decision, the DRB placed the burden on Appellants to demonstrate that the Project would adversely affect the character of the area.

It is Applicant's burden to prove that the Project complies with applicable Regulations. See In re Miller Conditional Use Appl., No. 59-3-07 Vtec, slip op. at 16 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.) ("[W]here there is no expression in a municipal ordinance to the contrary, an applicant carries the burden of proof to show that their proposed project conforms with the Regulations"). Under Regulations § 9.4(c), this burden requires evidence to support a finding that the Project will not adversely affect the character of the area affected. In the supplemental decision, the DRB considered evidence in the record and determined that the evidence was sufficient to determine that the Project would not adversely affect the character of the area. The DRB did not improperly shift the burden of proof from Applicant to Appellants

15

by leaving it to Appellants to counter this finding by demonstrating that the Project would, in fact, have an adverse impact on the character of the area affected.

It is within the DRB's authority to weigh evidence from both sides and make conclusions based on those findings. See In re Group Five Investments CU Permit, 2014 VT 14, ¶ 5. As noted throughout this decision, the DRB's findings and conclusions are fully articulated and supported by evidence in the record. Appellants, in their brief, point to no error by the DRB in making its legal conclusions other than those addressed in this decision.

## Conclusion

For the reasons stated in greater detail above, we conclude that the DRB's findings of fact and conclusions of law satisfy the procedural requirements under MAPA. Specifically, a reasonable person could accept evidence from the record as adequate support for the DRB's findings of fact and that the DRB's legal conclusions are based on these findings of fact. Furthermore, the DRB properly relied on 24 V.S.A. § 4414 and the Town Plan for its definition of character of the area. We therefore conclude as a matter of law that the proposed commercial retail development is allowed as a conditional use in the Residential/Commercial District in the Town of Chester, Vermont and the project satisfies the conditional use requirements of the Chester Zoning Regulations. For this reason, we **AFFIRM** the Town of Chester Development Review Board's Supplemental Findings of Fact, Conclusions of Law, and Decision on Remand granting a conditional use permit.

This completes the current proceedings before this Court. A Judgment Order accompanies this Decision.

Electronically signed on December 22, 2014 at 03:49 PM pursuant to V.R.E.F. 7(d).

_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

16